Good afternoon, your honors, and may it please the court, Elizabeth Tiblett on behalf of opponent and defendant XTOEnergy. If I may, I'd like to reserve three minutes for rebuttal. Granted. XTOE asked this court to reverse the trial court's order denying XTOE's motion to compel arbitration. In this case, the plaintiffs alleged that XTOE breached its oil and gas leases. The oil and gas leases at issue in this case are not identical. Some contain arbitration provisions and others do not. None of the class representative's leases have arbitration provisions. Until the time that XTOE moved to compel arbitration, XTOE did nothing to invoke the judicial process with respect to the unnamed class members or the class representatives. XTOE acted purely in a defensive posture. In response to plaintiff's motion for class certification, which was the first time that XTOE was on notice that plaintiffs intended to include in the class leases with arbitration provisions, XTOE immediately voiced its opposition to that inclusion. How is that really the first time that they know? Having potential class members, especially given Marburger, why isn't the date earlier that we would attribute knowledge? I would say two things. First of all, Marburger was a different case involving different claims, involving some leases that were ultimately included in the certified classes in this case, but also many leases that in fact were not at issue in this case and still are not at issue in this case. So there is not an identity there. Additionally, in class certification, obviously prior to the motion for class certification, you're doing discovery about what may ultimately be included in the class, what the plaintiffs may ultimately want to do when they move for class certification, but you do not actually know what the plaintiffs are going to do until they in fact do it. And I'll say that the record in this case demonstrates that. So over the course of the litigation, plaintiffs narrowed their class definition, carved out claims, carved out people. So the potential class, if you will, it was a moving target. The only time period at which it became clear that plaintiffs were not going to give effect to the arbitration provisions in several of the leases was their amended motion for class certification. And in response to that amended motion for class certification, XTO made explicitly clear it would move to enforce its arbitral rights. XTO specifically said that it was inappropriate to certify this case as a class because doing so would require the court to consider all of the individualized and different arbitration provisions. XTO also argued that the plaintiffs were not adequate class representatives with respect to the unnamed class members with arbitration provisions. Well, there doesn't seem to be a dispute that from that point that the intent to compel arbitration is asserted numerous times. But what is the moment of enforceability from your perspective? Because in your opening brief, you seem to be treating class certification itself as that time. In the reply, you're talking more about the expiration of the opt-out period. What is your position? It was the point at class certification when it became clear that the court was certainly not going to carve out in response to XTO's request the leases with arbitration provisions. However, there was no intent on behalf of these unnamed class members to actually litigate their claims until such time as they failed to opt out of the class. And just as an example, after the certification order occurred, we obviously asked this court to review the certification order. We came back to the trial court. We talked about proper distribution of notice, what the notice should entail. I'll note that every single one of those filings XTO maintained that it intended to enforce its arbitral rights. But after the notice went out, one of the unnamed class members who in fact had arbitration provisions in four of its leases opted out. At that point, XTO clearly had no reason to argue that that particular unnamed class member was intending to breach its arbitration obligation. That said, if the moment of enforceability is class certification and there's a delay of nine months to the actual motion to compel, how does that delay factor into our thinking about whether you preserved your claim, preserved their rights? Sure. The question then is during that nine-month period, did XTO take any actions that could be construed as an intentional relinquishment of a known right to arbitrate? I will say first and foremost, we could not have moved to compel arbitration during that time period. We did not have any unequivocal demonstration that the class members intended to breach their obligation to arbitrate, number one. Number two, it would have been futile to move to compel during that particular time period. Again, because of the requirement that there be a ripe dispute, meaning there's a disagreement to be decided by the court as to whether or not the arbitration provisions can be enforced or not. In each one of its filings, XTO made note of its intent to enforce the arbitration provisions in accordance with the timeline that was stated in the magistrate's report and recommendation. And when I'm referring to... One of the things that you never did was you never asserted it as an affirmative defense. And in your answer to the third amended complaint, you listed 23 affirmative defenses, some of which did not apply to name class members, but you didn't add the arbitration clause. Why didn't you do that? At that point, there was nothing on the face of the complaint that would demonstrate that the affirmative defense applied. Again, the XTO did not have an obligation to include in its answer affirmative defenses with respect to people who were not yet parties. But you asserted that some putative class members may have lacked standing and it claims some of the members are bored because there were no post-production expenses. How would you have known that without knowing who was going to be included in the class? That was something that had become obvious at that point through discovery, something that had essentially been brought to light through both the responses and the requests. So that was something that we did give fair notice to plaintiffs of. But I will also say that I've not seen any cases that show that if a defendant goes above and beyond its obligation in asserting affirmative defenses with respect to an unnamed class member, that it then must present every conceivable affirmative defense that may apply at some future date. But by the time of the third amended complaint, didn't you already have the expert report in this case, not Marburger, indicating that there were putative class members with arbitration provisions? Are you referring to XTO's expert report? Correct. Thank you, Judge Ross. Actually, what that expert report said was that there were leases that Phillips, which is the lessee under the potential leases that could later be included, was that Phillips had executed leases that had arbitration provisions. It was that these leases might later be included. It was not that, in fact, plaintiffs had demonstrated an intent to include those leases in the class. And again, I'll just go back to the question, which is, did XTO demonstrate an intent to relinquish a known right? And there was no right at the time that XTO filed its answer. XTO did not have any parties, the court did not have any parties before it that actually, in fact, had arbitration provisions. In looking at whether or not the XTO waived its right, are we limited to look only from the period of time, and you talked about the nine month period, that there was nothing that you did that would have been a waiver. Could we look at the actions that were not taken prior to that? I think that's where the Chesson principle comes into play. So absolutely, I'm not arguing that the entirety of the time period prior to class certification absolutely cannot be considered. What I'm saying is, on this record, when there were no named plaintiffs with arbitration provisions before the court during that time period, before the motion for class certification, and also before certification, the delay in itself is not evidence of intent to waive a known right. Can I just ask a question about arbitration as an affirmative defense? Are you stipulating or conceding that arbitration is actually an affirmative defense? I mean, so Procedure 8C lists the affirmative defense as arbitration and award, seeming to suggest that there has to be both the arbitration taking place in an award out of it, not necessarily just the ability to go to arbitration, because that's kind of governed in many ways by the FAA and how you do and how you go about petitioning that and getting all of that done. So do you think that arbitration is actually an affirmative defense? Judge Phipps, that's a great question and the answer is no. I do not concede that. Primarily, our arguments regarding what was or was not pled in the affirmative defense is to demonstrate how the record before this case is a mismatch with some of the other cases that have been cited, obviously in plaintiff's police brief, but then also in the case of the XTO. So the answer is no. I mean, from where I sit, XTO was, we had a responsibility to provide fair notice of our intent to arbitrate at the earliest time that we were actually able to do so, and we consistently and unequivocally provided notice to both the court and the plaintiffs of our intent. So, I mean, I guess there's this understanding, though, that in terms of waiving your right to arbitrate, you can do this expressly. I don't think we're going to find that in the record, but this can also happen implicitly. And so, do we take a totality circumstances approach to kind of just gauge what this case looks like, how long it went on, what the docket looked like, what everybody's position was, and say, okay, this certainly looks like an intent, you know, we could see an implied waiver. And let me just sharpen the question a little bit because I think what you're saying is, hey, hey, we never did anything affirmative that, you know, said that we wanted to waive it or anything else like this, but I think the rejoinder to that is sometimes it doesn't take something affirmative. If you just keep proceeding like this is the choice for us, you know, can't there be some implication from that? The answer is yes, there can be an implied waiver. What I would say is the record does not demonstrate an implied waiver in this particular case. So, if you take cases where courts tend to find an implied waiver, let's take the Xerox case that recently came from the Ninth Circuit. That is a situation where the defendant did two things that the court found showed an implied waiver that are not present here. Number one, the defendant repeatedly sought a merits determination with respect to the unnamed class members, repeatedly. And the court, in its opinion, discusses that at great length. It clearly bothered the court that the defendant went on what it called a six-year appellate journey to get a merits ruling with respect to those unnamed class members. The other point that they believed showed an implied waiver was the defendant in that case had two separate agreements that had arbitration provisions, and it acted inconsistently with respect to those two agreements. So, the one agreement where the court ultimately found there was a waiver, the defendant never raised the arbitration issue, never. Never raised it in opposition to the motion for class certification, never did anything to say, hey, we absolutely intend to enforce our arbitral rights. To the contrary, it sought merits rulings with respect to that agreement. By contrast, the other agreement at issue in that case, the defendant did consistently say, we intend to enforce our rights under this agreement, including in opposition to the motion for class certification. And I'll note the trial court in that particular case accepted that there had not been a waiver of the arbitration agreements that consistently the defendant had said, we don't think these ought to be in the class. These the disparate treatment between those two agreements and found the defendant must have perceived that there was a strategic advantage to invoke the judicial process with respect to the agreements in which it had waived the provision. And just to follow up on Xerox, so didn't the majority also read, didn't the majority also gain some momentum for implied waiver from the engaging in class discovery? That's correct. And I thank you for bringing that up because I will say there were arguments in Apoli's brief that XTO conducted class discovery. That is incorrect. When you look at the discovery request at issue in the Xerox case, the Xerox discovery request specifically sought discovery from each punitive class member. They went out to seek discovery from those unnamed class members regarding the merits of their claims. XTO never did anything of the kind here. To the contrary, our discovery requests only sought to find out how do you plan to prove your case on a class-wide basis, which is the fundamental question that's to be presented at class certification. Doesn't that get into some merits? Questions, for example, whether a gas molecule is marketable or when it's sold. Those seem like they're merits-based rather than going to certification alone. I respectfully disagree, as your honor is I'm sure aware. There is somewhat of an intersect between what's at issue and certification and merits and what is absolutely fair game and what the parties ought to present to the court is evidence regarding whether the plaintiff's method for proving liability across the entire class comports with the applicable law. So our discovery requests were intended to include only that very narrow sort of intertwined and mandatory consideration on class certification. Okay. We're here for you, Ms. Vidal. Thank you. May it please the court. My name is David Borkovic, and I am representing the class of plaintiffs in this matter. Your honor, counsel assumes that, XTO assumes, that Morgan doesn't have any implication to this case. It most certainly does. But it is a fact-intensive examination that the court must go through. So let me go through some of the facts that the trial court found, and XTO does not even attempt to say they were clearly erroneous. These have to be accepted. XTO produced gas under these leases since 19, excuse me, since 2012. They had knowledge of the leases and what was contained in them since 2012. By March 2017, in the Marburger case, they knew that leases, some leases contained arbitration provisions. Their expert filed or served a report that said that. The people who were class members in Marburger were class members, some of the people were class members in this case. They weren't named plaintiffs, though. They were not named plaintiffs. And some of the people seems rather critical when you need to know about their royalties, right? We, when I say some of the people, the reason that we made an amendment to eliminate some of the Marburger folks was the transunion case decided by the Supreme Court. We wanted, we had to make sure that the people who we brought over from Marburger had actual Article III standing, had damages, so that they had to have been paid royalties. That was the limitation on it. Now, those people, we know that those people still had arbitration clauses in this case. Yeah, but they weren't before the court. Well, Judge, I'm not sure that that makes any difference. What? Just because you have a case over here and there's a case here that you're at the court's hearing doesn't mean they have jurisdiction. Well, Judge, for what it's worth, we did plead as jurisdiction, continuing jurisdiction, because Judge Eddy had retained that during the case. But their expert in this case, in this case, said that people had, said that some of the class members had arbitration clauses. They knew that people in this case had arbitration clauses. That was before the certification decision. That was before the certification decision. And in fact, we filed a third amended complaint. And in the third amended, the answer to the third amended complaint, XGO did not mention arbitration. And Judge, if I may, I agree with you totally. The general rule, as accepted in most circuits, is that the arbitration and award provision in Rule 8 applies to a prior arbitration and award. Notwithstanding that, Rule 8 talks about other affirmative defenses. And innumerable cases in this circuit and others list arbitration as something that should be mentioned. In fact, very recently, the Second Circuit had a case in a non-class aspect where the defendant listed a million affirmative defenses and, quote, reserved the right to supplement this, but never mentioned arbitration. And the Second Circuit criticized them for that. That case is Doyle v. UBS Financial Services 144F4-122 at page 131, note 9. That's Second Circuit 2025. Mr. Borgovich, you say in footnote 3 of your brief that XGO timely, clearly, and repeatedly sought to enforce its arbitration rights after it opposed the motion for class certification. I want to make sure we're understanding the focus of your argument. Is it the case you're not contesting that they did whatever might be necessary from that point forward? Your argument is that there were other things that they needed to do before class certification to provide timely notice. I think that they had waived well before class certification. But are you making any argument that from class certification forward that there was anything inadequate? Yes, they could have moved formally for a motion to compel. If you look at Magistrate Eddy's decision for class certification, she says plaintiffs argued that there was a waiver. She says, quote, as a preliminary matter, no recommendation will be made as to whether XGO has waived its right to compel arbitration as there is no pending formal motion to compel arbitration. And that's at page JA-510. She goes on to the bottom of that page and says, to the extent that XGO intends to raise the arbitration defense post-certification, a motion may be made to amend the class definition to exclude such members after the expiration of the opt-out period. So if you read that, would you think you had to do anything immediately? Judge, I think they had to do things well before that. And let me go into it. Isn't that a reiteration that they didn't have to? Well, Judge, she doesn't know. She says, to the extent that XGO intends. I mean, when we want to talk, this is a case about implied waiver, right? It's not express waiver. We've got nothing that says, yeah, you know what, forget it. So it's implied waiver. Waivers, you know, it's a little tricky because it has to be unequivocal. And so we might have some things that are consistent with an intent to waive. But isn't the standard really unequivocal? And so consistency is a little short of unequivocal, right? Judge, I don't think that is correct. If you look at Morgan, the standard is whether XTO knowingly relinquished the right to arbitrate by acting inconsistently with that right. By acting inconsistently with that right. Well, how did they act? How many times did they reiterate? Use a, I'll use another word, but look the number of times they made the request. They made mention of the fact that they want to, there are arbitration clauses that for certain plaintiffs that will need to be arbitrated. Your Honor. They keep saying that. I think they keep saying it, Judge. They said it in their brief in opposition to class certification. And I think if you look, there's a specific finding of fact that they did not raise anything about arbitration until they sought to oppose class certification. Nothing before that. We had years of litigation. Not involving any named plaintiffs. Judge, I believe that Morgan changes the inquiry about this. If you look at Morgan. Morgan just says you don't need prejudice. Morgan says you don't need prejudice. What Morgan also says is that you focus on the act, the person holding the right. But look at those steps that Samsung didn't take. I mean, that's a different case. Your Honor, what's different about it is that in Samsung, there was a known right to arbitrate. Let's take a look at the Hawksworth categories. They're going to fail on every one of those Hawksworth categories. The first time that they made mention of arbitration was in their opposition to the motion for class certification. After that, it's not plenty of times. After that, what did they do? They filed, they waited and filed a motion for class, a motion to compel arbitration after all opt-outs, the one, were known. Now. What is it that you would have had them do before class certification where the named class members don't have arbitration provisions? Provide notice. Provide some sort of notice. You know, it's really interesting to me because what seems to be animating the case law is kind of gotcha arbitration enforcement. We've gone down one road. Everyone thought we were going to litigate. Gotcha. Thank you very much. See you in arbitration. Right. But in this case, it strikes me that the event that really defines kind of what this case looks like is class certification. And it's a basic principle of, I think, class actions that you should move for class certification at the first or earliest practicable date. And so it strikes me that any gotcha that a plaintiff's class may feel from arbitration can be corrected by accelerating their motion for class certification. If you're worried about gotcha, then move for class certification earlier. The flip side of that might be even stronger because the longer that you postpone moving for class certification, the longer you can point to the defendants with an arbitration clause and say, look how many years went by before anything happened. And so at one level, we're worried about gamesmanship. But maybe the singular most important event is when we begin to find out what the definition of the class really looks like. And that's in plaintiff's control largely. Your Honor, as a practitioner, after in-ray hydrogen peroxide, we need to be able to at least outline to the court what liability is going to look like. We have to be able to present some sort of trial plan, a prima facie case. And so we need discovery to satisfy the in-ray hydrogen peroxide requirements. In this case, I disagree with you that class certification is the key period. There are two things that support my disagreement. The first is XTO admits in its reply brief that people, a holder of a right, can waive that right prospectively. XTO or a lending company could put on its website, we're not going to enforce our right to accelerate payments. There doesn't have to be a lawsuit for there to be a waiver. A very, very easy case in express waivers. Very easy case in express waivers. Implied waivers is more contextual and more circumstantial. So, Judge, you have an expert. Yes, but here, go back to the preliminary part of Judge Phipps's question. What was it that they were to do prior to class certification? What document, you know, we asked in the last case, what would you do in cross-examination? You were here earlier. What document would you file here that they didn't file that would preserve their right to arbitration? In white, the court said, this court said. White, okay. They could file, they could file, serve a notice, file a notice. They could send counsel a letter that, hey, we see this. We're going to preserve it. Even at the time of opposing, even at the time when they opposed class certification, they did not ask for arbitration. They said, it's not typical. They did say that they reserved the right to assert other defenses if the court certifies the class. And Judge, that's the reservation of right that the Second Circuit just rejected. I mean, how am I supposed to know? How's the court supposed to know what rights they're reserving? I mean, they could mention, we're going to go for arbitration. We're going to move for arbitration. Right, but 15 months before, 15 months plus before class certification. Absolutely. They said in their brief, they raised the arbitration question. They clearly raised arbitration. They raised the court, the trial court, the trial court found that they didn't mention arbitration until they opposed class certification, regardless of what their brief says, Judge, the trial court. It's not clearly erroneous. So, they went all the way through class certification, up to the point of class certification before they mentioned this. Let me pose a hypothetical to you. Now, wait a minute, you said they went all the way through. They never mentioned it until they filed an opposition to class certification. Okay. First time they mentioned it. I mean, let's assume that I have a class certification. I bring a class action which has 45 class members. And XTO has examined the leases and they've gotten an expert to look at them. And they see that there are 10 that have arbitration clauses. Can they sit on that knowledge until class certification? Because if we take those 10. But they didn't. They did. In this case, they never said anything about arbitration until they filed their opposition. In class certification, certification didn't come along for how many months after that brief was filed? I don't remember precisely. It was like three or four months. But they filed their brief, then we had a hearing. Right. And I believe that the, it was a two-day hearing. And I believe that the recommendation came out two months after the certification hearing. I mean, the record will tell you how long it was. You know, I kind of want to pick up on your hypothetical. Because if you have a mixed class, some people have arbitration clauses, some people don't. Right. It's perfectly fine at one level to go and say, hey, we entirely want to be in court to defend against the people without arbitration clauses. Because we're going to be fighting them no matter what. So when you have a mixed class, though, it seems that everything they're doing until class is pinned down is valid for at least some of the class. Are you saying that the only way that they can proceed to validly defend themselves against part of a mixed class is to then concurrently send notice that, hey, we're going to try to, if the class gets certified in a way that some members have arbitration clauses, we'd like to enforce those? Is that the only way they can defend themselves against the members of the class without arbitration clauses? Without waiving arbitration for the others? They have to give some notice that they're intending not to waive their, in my example, judge. XTO takes it below 40 class members. And so there's no class. They can game the system by hiding how many arbitrable leases there are until the class is certified. Now, in my hypo, I said that there were 45 people. We need 40 under Stewart in order to get numerosity. But if they don't disclose that there are 10 and we now have only 35, the district court has wasted its assets considering a motion that can't fail because we don't have numerosity. Is the percentage of arbitrable versus non-arbitrable leases a relevant consideration in requiring that there be earlier notice? I mean, if it's a very small percentage. In this case, judge. Is that the same obligation? In this case, judge, yes, because they knew. They knew how many people had arbitration clauses in their leases. How could they know that when your definition of the class kept changing? Well, judge, my definition of the class ended with the third amended complaint. And that amended complaint did two things. One, it formalized that we dropped count one. And second, it limited the class to a particular area. And that particular geographic area, Butler County, was the same area that was involved in Marburger. So they knew. They knew that they had leases in Butler County that were involved in Marburger that had arbitration clauses. The other aspect of this is the Ninth Circuit is correct. You can waive a right prospectively. You don't have to have a lawsuit in order to waive a right. We don't, after Morgan, we don't look at the effect on the people who are opposing the right. We look at what the defendant did. We don't look at the effect on the class members. So is it your position that where you have a mixed class and where the named plaintiffs do not have arbitration provisions that failure to send a letter or to list arbitration as an affirmative defense is per se a waiver? Judge, I think so. I think you have to give some form of notice. I don't care. Clearly, they knew enough. When they answered the third amended complaint, they had in their hands a report from their expert that said that this class, the class that we have right now, has arbitration clauses in it. They knew. They filed an answer that didn't mention a word about arbitration. They didn't send me a letter. They didn't send the court a letter. They didn't file anything. Are we looking for affirmative evidence of an intent to arbitrate or the absence of evidence that they intended not to arbitrate, the absence of evidence of a waiver itself? We are looking for evidence that they did not act inconsistently with an intent to arbitrate. How is failing to send a letter saying that you intend to arbitrate is something that would indicate an intention to waive? If they sent a letter saying that we don't intend to arbitrate, to waive our right to arbitrate, that's fine. They preserve it. No, how is failure to do that? Because now you consider their actions in the litigation and see whether those actions are inconsistent with an intent to arbitrate. We talked about, my opponent talked about discovery. The basis for a class action is the proof as to what. Let's stop a second. I mean, what more? I'm going back to this brief in opposition. What more did they need to say to tell you that they intended to arbitrate that they stated that they would not waive their arbitration rights under any leases containing arbitration clause? Judge, I think. How they put that in their response brief? I think they waived it before that time, Judge. You just said they should have sent you a notice at that time. No, they should have sent me a notice at some point, at the earliest practicable time. But they waived it by that point. Look at the discovery that went on. What's the practical time, practicable time you're hanging your hat on in this case? In this case, when they found an answer, they knew. They knew they should have had. I mean, does this just reduce to some sort of opening letter that says, hi, I see you filed a class action against us. We aren't even going to answer. We're, you know, our answer is not due for X number of days. Nothing else is due. We just want to let you know that if anybody has an arbitral claim, we aren't waiving it. And that's good enough. If they did that, if every single practitioner, class action defense counsel in the circuit just did that, would that be good enough or do you need something a little more specific? What if they just said, you know, we don't even know. We haven't even done the diligence. But if there are any, we don't want to waive. Your Honor, I don't know whether that would be sufficient. If someone did that, we would then look and see whether that was consistent with what their conduct was in the discovery phase. Don't forget. Oh, so you have to update it. So is it monthly updates? Hi, we just want to let you know you filed the case. We don't want to waive arbitration. You know, a few months have gone by. I know we're going back and forth on a few items. We're still disagreeing about the scope of class. Nothing goes. Just want to remind you, we don't want to waive arbitration. Was it seasonal updates on not waiving arbitration? Judge, I think what you need to do is at a minimum, you need to provide notice. But one might not be enough because you provide one, you could waive afterwards, right? So it's got to be seasonal. And so, Judge, you've at least put it on the table. But now we look at what are your actions? What are your actions in this case beyond that, that shows a preference for litigation? Tell us how you guarantee that it's on the table. Daily emails. It's got to be daily emails. Tell us how you guarantee that. Email every day. Judge, are you going to let them conduct discovery, which specifically asks about the claims of each class member? All right. That, to me, that's not available in arbitration. That is not available in arbitration. They got information in this case, in discovery for class certification. It is not available in an arbitrational setting. And they're asking us to tell them to lay out a game plan for what it is. That's stuff that they can't get in arbitration. Those people are being prejudiced. Okay. If I may just make one minor. We've gone quite a bit over. So we'll give you just a few seconds to wrap up. Judge, I think that if you look at Morgan, Morgan doesn't care about the effect on the class members. Whether you can get a motion to compel or not against an absent class member is irrelevant. Because Morgan focuses solely on the conduct of the holder of the right to arbitrate. You don't care about the effect on anyone else. And clearly, they had a right to arbitrate. They could have exercised, they could have waived that right, as I believe they did, through their conduct without saying anything. Thank you. Thank you. I appreciated the questions regarding notice. I went over the same questions in my mind when I was getting ready for this argument. My questions were, what role were we supposed to file this notice under? What was the notice supposed to say? When is the notice supposed to, when is it supposed to be served? What utility does it serve other than potentially creating a controversy where there may not ultimately be one? Obviously, many, many plaintiffs counsel just choose to carve out leases or contracts that have arbitration provisions outside of the class because they want to avoid precisely the controversy presented before this court. I'll want to make one point regarding the hypothetical that Appui's counsel has posed. I will say his hypothetical appears to match the N. Ray Cox opinion out of the Tenth Circuit. And in that situation, the Tenth Circuit noted that 87% of the contracts at issue in that case had arbitration provisions, but the defendant sat on its hands, never raised the existence of those arbitration provisions and so the Tenth Circuit perceived the defendant as trying to get a second bite of the apple on Rule 23 by raising the existence of the arbitration provisions and saying you can't even have a class. That is not this case. It is not. And the waiver analysis is a fact-specific, circumstance-specific analysis. The question presented to the trial court and to this court is whether the undisputed evidence shows that XTO intentionally waived its rights with respect to the unnamed class members. Now, I'll note the Second Circuit opinion that Appui's counsel cited. That involved, he said that it was a non-class case. The named plaintiff had an arbitration provision. That is not what we're dealing with here. And that distinction is very key. It's key because courts do not want defendants to engage in gamesmanship. They don't want the defendant to be able to test the waters in the trial court, see if they can get something they want, and then when it looks like it's not working out for them, say, nevermind, I'm pulling the court on this. I'm going to arbitration. That is not what has happened in this case. So you're positing a different rule and approach in terms of what would reflect an applied waiver depending on whether the named plaintiffs have arbitration clauses or not? I'm not saying that there should be a completely different rule. What I think is, I think that if your named plaintiff has an arbitration provision, you're potentially going into more of an express waiver analysis. What I'm saying is if you're looking for the implied waiver and the defendant's conduct only pertains to the named plaintiffs, opposition to class certification, simply participating in what the court process requires, which would be responding to discovery requests, things of that nature, things that a defendant absolutely must do upon sanction of the court, then you should not find an implied waiver. The defendant is simply doing what its obligations are under the rules of civil procedure. And that is precisely what XTO did in this case. I have not heard anything, either in the briefing or in the argument today, that actually points to evidence that XTO acted inconsistently with respect to its arbitral rights against the unnamed class members. XTO never took any action that could be reasonably construed as a waiver of those rights. To the contrary, when plaintiffs moved for class certification and it became clear they did not intend to excise leases with arbitration provisions outside of the class, XTO said, hold on, those people should never become parties to this case because they have arbitration provisions and we intend to enforce them. And when we do enforce them, that is going to create an individualized inquiry for the trial court. And it also is an inquiry that the named plaintiffs are not prepared to defend against because they themselves do not have arbitration provisions. On this record, your honors, XTO did not waive its rights to arbitrate. Plaintiffs have not identified any rule that would require XTO to provide some ambiguous pre-certification notice of intent to arbitrate provisions that may at some potential date potentially become part of this case. And for that reason, the failure to provide a non-required notice cannot be construed as an intentional relinquishment of a known right. We thank both counsel for arguments today and request that a transcript be prepared if the parties split that cost. We will take the case under advisement and we will now take a brief adjournment. Thank you.